UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILBERT JACKSON, on his own behalf
and on behalf of those similarly
situated,

                    Plaintiff,

v.                                    Case No. 3:07-cv-773-J-33TEM

ADVANCED DISPOSAL SERVICES, INC.,

                    Defendant.
_____/

**ORDER**

     This cause comes before the Court pursuant to Defendant
Advanced Disposal Services, Inc.'s Motion for Summary Judgment
(Doc. # 10), filed on October 1, 2007.  Jackson filed a response on
October 25, 2007.  (Doc. # 13.)  For the reasons that follow,
Advanced Disposal's motion is DENIED.

**I.   Background**

     On August 21, 2007, Jackson filed this lawsuit against
Advanced Disposal alleging that Advanced Disposal failed to pay him
properly for overtime hours he worked.  (Doc. # 1.)  Specifically,
Jackson charges that Advanced Disposal did not pay him time and
one-half his regular rate of pay for all hours worked in excess of
forty per week, in violation of the Fair Labor Standards Act.[1]
(Doc. # 1, at 2.)  In January 2005, though, Jackson filed for

_____

     [1]Jackson also brought his lawsuit on behalf of others
similarly situated with him.  (Doc. # 1.)

Chapter 13 bankruptcy protection.[2]   (Doc. # 10-2, at 2.)   Jackson failed to list his claim against Advanced Disposal as an asset in his bankruptcy case.   (See Doc. # 10-3.)   Advanced Disposal takes this failure as a statement that Jackson had no such claim, and identifies that Jackson's current lawsuit is inconsistent with that prior position.   Thus, in its motion for summary judgment, Advanced Disposal invokes the doctrine of judicial estoppel.   Advanced Disposal argues that Jackson should be barred under the equitable doctrine of judicial estoppel from advancing in this lawsuit a position inconsistent with the position he took in his bankruptcy case.

## II.  Standard of Decision

The Court should render summary judgment for Advanced Disposal "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the

---

[2]In short, Chapter 13 bankruptcy allows a debtor to rehabilitate his finances by restructuring debts he cannot presently service:

> Chapter 13 allows a portion of a debtor's future earnings to be collected by a trustee and paid to creditors.  A Chapter 13 debtor does not receive a discharge of his debts; rather, the debtor is allowed to extend or reduce the balance of his debts through a plan of rehabilitation.

Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1284 n.1 (11th Cir. 2002.

initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment." Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

**III. Discussion**

"[J]udicial estoppel is an equitable doctrine invoked by a

court at its discretion." New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (internal quotation marks omitted); accord Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1285 (11th Cir. 2002).  The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. at 749-50 (internal quotation marks and citation omitted).

In New Hampshire v. Maine, the Supreme Court explained that courts typically consider three factors in determining whether to apply the doctrine of judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position.  Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.  Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity.  A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

532 U.S. at 750-51 (internal quotation marks and citations omitted).  In listing these factors, though, the Supreme Court took care not to "establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id. at 751.  The Eleventh Circuit -- without discarding the flexibility counseled by the Supreme Court, Burnes v. Pemco

4

Aeroplex, Inc., 291 F.3d 1282, 1285-86 (11th Cir. 2002) (concluding that factors applied in Eleventh Circuit are consistent with Supreme Court's instructions in New Hampshire v. Maine and provide sufficient flexibility) -- named two factors relevant to the judicial estoppel calculus:  "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding.  Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." Id. at 1285.  These factors are themselves flexible, and "courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine." Id. at 1286.  Under both formulations, it is clear that two essential elements are important to the determination of whether to apply judicial estoppel: inconsistency and intent.[3]

In the present case, there is no dispute that Jackson's position before the bankruptcy court is inconsistent with the position he now advances before this Court.  In his disclosure of property to the bankruptcy court, Jackson averred that he had no contingent and unliquidated claims of any nature. (Doc. # 10-3, at 8.)  This statement was made under oath. (Doc. # 10-3, at 29-30.) Jackson now maintains that he did have such a claim, a claim under the FLSA for unpaid overtime.

---

[3]"For purposes of judicial estoppel, intent is a purposeful contradiction -- not simple error or inadvertence." Barger v. City of Cartersville, 348 F.3d 1289, 1294 (11th Cir. 2003).

What Jackson does dispute is the intent element.  In his response to Advanced Disposal's motion for summary judgment, Jackson explains that he filed this lawsuit two and a half years after he filed bankruptcy. (Doc. # 13-2, at 2.)  He then affies, "I was not aware of any obligation to report to anyone the recent suit that I filed for overtime.  In fact, I was not aware whether I would be owed any damages for unpaid overtime." (Doc. #. 13-2, at 3.)  A permissible inference from these averments is that Jackson's failure to report his FLSA claim in his bankruptcy proceeding was not calculated to make a mockery of the judicial system.  Specifically, the Court can infer that Jackson was unaware of his FLSA claim at the time he completed his bankruptcy disclosures.  Indeed, the earliest date on which Jackson must certainly have known about his FLSA claim was August 21, 2007, when he filed this lawsuit.  That is more than two years after he filed his bankruptcy disclosures on February 5, 2005.  Additionally, the Court can infer that Jackson was unaware of his continuing obligation to update his financial disclosures to the bankruptcy court.[4]  Thus, the Court can infer that Jackson's failure to report his FLSA claim to the bankruptcy court was the result of inadvertence or error.

---

[4]"The duty to disclose is a continuing one that does not end once the [financial disclosures] are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." Burnes, 291 F.3d at 1286.

Advanced Disposal argues that the Court must draw a contrary inference: that Jackson's conduct was calculated to make a mockery of the judicial system. (Doc. # 10, at 3.) A court may infer such an intent where a plaintiff both knew about the undisclosed claim and had a motive to conceal it from the bankruptcy court. Burnes, 291 F.3d at 1287-88; accord De Leon, 321 F.3d at 1291-92. Advanced Disposal submits that Jackson meets this test. There is no question that he had a financial motive to conceal his potential FLSA claim from the bankruptcy court. (Doc. # 10, at 5.) Indeed, the Eleventh Circuit has recognized that a Chapter 13 debtor has a financial motive to conceal assets from the bankruptcy court because successful concealment will ultimately reduce the amount of repayment the debtor must make. De Leon, 321 F.3d at 1291, 1292.

Advanced Disposal pursues two theories on the question of whether Jackson knew about his undisclosed FLSA claim. First, Advanced Disposal identifies that Jackson claims he is owed overtime compensation dating back three years. That includes a period of several months before Jackson filed his bankruptcy disclosures. According to Advanced Disposal, Jackson knew or should have known how many hours he worked per week during this time. From this, Advanced Disposal concludes that Jackson "had either actual or constructive knowledge of a claim for unpaid overtime when he filed for bankruptcy." (Doc. # 10, at 5.) Perhaps, but not certainly. What Advanced Disposal has laid out is

a chain of permissible inferences, not a set of facts leading inexorably to one conclusion.

The Court can indeed infer that Jackson knew he worked more than forty hours per week in the five months before he filed bankruptcy, but that inference is not mandatory. Advanced Disposal has identified no authority for the proposition that a workingman must always know how many hours he has worked in a particular week. Likewise, Advanced Disposal has identified no authority for the proposition that a workingman who knows he has worked more than forty hours in a week must also know that he has a FLSA claim.[5] Advanced Disposal would have the Court follow a chain of inferences to the conclusion that Jackson knew about his claim when he filed bankruptcy. From that conclusion, Advanced Disposal would have the Court infer that Jackson intended to make a mockery of the court system. This is too tenuous to support summary judgment. Summary judgment is proper not when a chain of inferences could entitle the movant to judgment as a matter of law, but when reasonable contrary

---

[5]The question of when the limitations period commenced on Jackson's claim is not before the Court. On Advanced Disposal's motion for summary judgment, the Court must look to evidence in the record to determine whether there is any genuine question of fact as to Jackson's intent. This requires consideration of Jackson's subjective knowledge of his cause of action. In contrast, a party's subjective knowledge of a cause of action is not generally relevant to a calculation of a statutory limitations period. Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 418-19 (2005) (noting standard rule is that "the limitations period commences when the plaintiff has a complete and present cause of action" (internal quotation marks omitted)).

inferences are impossible.  See Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330-33 (11th Cir. 1988).

Advanced Disposal's second theory for showing that Jackson knew about his FLSA claim relies upon Jackson's failure to amend his disclosures to include the claim.  Clearly, Jackson knew of his FLSA claim by August 21, 2007, the date he filed this lawsuit.  And Jackson was under a continuing duty to amend his bankruptcy disclosures.  See Burnes, 291 F.3d at 1286.  Jackson failed to discharge that duty.  On this theory, then, Advanced Disposal has identified sufficient evidence from which the Court can infer that Jackson intended to make a mockery of the judicial system.

However, Jackson has submitted material supporting a contrary inference.  The Court is not permitted to choose between competing inferences on summary judgment.  See Samples, 846 F.2d at 1330-33. This is true even where the factual questions raised would ultimately be decided by a judge, as in the case of Advanced Disposal's equitable defense.  See In re Metroprolol Succinate Patent Lit., 494 F.3d 1011, 1020 (Fed. Cir. 2007) (explaining that facts underlying equitable defense are found by judge, though "not on summary judgment if there is a genuine dispute"); cf. Banco Indus. de Venezuela, C.A. v. Credit Suisse, 99 F.3d 1045, 1048-49 (11th Cir. 1996) (noting that district court impaneled advisory jury to hear equitable defenses; and district court, in its discretion, adopted advisory findings of jury on equitable

defenses).  Consequently, unless the inference pressed by Advanced Disposal is mandatory, the Court must deny summary judgment.

The inference is not mandatory.  In this circuit, a court is permitted, but not required, to draw the inference when presented with material showing that a plaintiff knew about a claim and possessed a motive to conceal it.  In Burnes v. Pemco Aeroplex, Inc., the Eleventh Circuit court explained that "several circuits, in considering the particular issue of judicial estoppel and the omission of assets in a bankruptcy case, have concluded that deliberate or intentional manipulation can be inferred from the record."  291 F.3d 1282, 1287 (11th Cir. 2002) (emphasis added). The court approved the district court's conclusion on summary judgment that the plaintiff had the requisite intent to justify judicial estoppel.  Id. at 1288.  There was no mention of any material presented by the plaintiff to support the inference that he lacked the required intent.  See generally id.  Thus, the Burnes Court did not hold that intent to make a mockery of the judicial system must be found in all cases where the plaintiff both knew about a claim and had a motive to conceal it.  Indeed, such a holding would have been contrary to the flexibility counseled by the Supreme Court in New Hampshire v. Maine, 532 U.S. 742, 751 (2001), and reaffirmed in the Burnes opinion itself, 291 F.3d at 1285-86.

In De Leon v. Comcar Indusries, Inc., the Eleventh Circuit

once again affirmed summary judgment on the defense of judicial estoppel. 321 F.3d 1289 (11th Cir. 2003). In that case, the plaintiff both knew about his claim and had a motive to conceal it. Id. at 1292. This time, though, the plaintiff presented evidence aimed at supporting the inference that he did not act with an intent to make a mockery of the judicial system. Id. at 1291. In particular, the plaintiff showed that he made efforts to remedy his omission before the bankruptcy court. Id. These efforts were not begun until after the defendant argued for judicial estoppel. Id. at 1292. For policy reasons, the court determined that the plaintiff could not avoid summary judgment merely by disclosing a claim after having been caught concealing it. See id. Were such a course sufficient to avoid summary judgment, it would suggest to future bankruptcy debtors that they "should consider disclosing potential assets only if . . . caught concealing them." Id. (quoting Burnes, 291 F.3d at 1288). As in Burnes, though, the Eleventh Circuit did not hold that intent to make a mockery of the judicial system must be found in all cases where the plaintiff both knew about a claim and had a motive to conceal it. Instead, the court decided for policy reasons not to countenance an inferential step peculiarly amenable to abuse.

In Snowden v. Fred's Stores of Tennessee, Inc., the Middle District of Alabama squarely addressed the question of whether the analysis first set out in Burnes created a permissive or mandatory

inference.  419 F. Supp. 2d 1367, 1373 (M.D. Ala. 2006).  The court carefully read the language of the Eleventh Circuit opinions and considered "the Supreme Court's admonition [in New Hampshire v. Maine] that courts should not adopt inflexible prerequisites or an exhaustive formula and should always consider specific factual contexts in applying judicial estoppel."  Id. (quoting New Hampshire v. Maine, 532 U.S. at 751) (internal quotation marks omitted).  As a result, the court determined that Burnes and its progeny do not create a mandatory inference.  Id.  "Instead, an inference of intent to mislead will generally be justified when the plaintiff was aware of the claims and had a motive to mislead the bankruptcy court."  Id.  Finding the Snowden court's reasoning persuasive, this Court now holds that the inference, though generally justified, is not mandatory.  Thus, where a plaintiff presents sufficient material to raise a reasonable contrary inference, summary judgment on a judicial estoppel defense is inappropriate.

    That is exactly what happened in this case.  Jackson has presented sufficient material to justify the inference that his omission before the bankruptcy court was not a deliberate attempt to make a mockery of the judicial system.  To be sure, Advanced Disposal has presented sufficient material to justify the inference that Jackson did act with such intent, and Advanced Disposal may

very well prevail on its judicial estoppel defense at trial.[6]

However, the Court may not choose between competing, reasonable

inferences on summary judgment. For that reason, Advanced

Disposal's motion for summary judgment is denied.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Advanced Disposal Services, Inc.'s Motion for

Summary Judgment (Doc. # 10) is hereby **DENIED.**

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this

8th day of April 2008.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

---

[6]Because judicial estoppel is an equitable defense, the Court would be the fact-finder at trial on this issue. The Court expresses no opinion on which inference it might find more probable at trial.

13